CHEMICAL BANK AND TRUST COMPANY, as Successor of the CHEMICAL NATIONAL BANK OF NEW YORK, Trustee under a Certain Agreement Made by JAMES STREAT, Respondent, *v.* THOMAS STREAT, Individually, Appellant, Impleaded with FRANK R. STREAT and Others, Respondents.

First Department, January 13, 1933.

*Joseph Larocque* of counsel [*William H. Crawford* with him on the brief; *Choate, Larocque & Mitchell,* attorneys], for the appellant.

*Charles C. Parlin* of counsel [*Aldis H. Wurts* with him on the brief; *Cotton, Franklin, Wright & Gordon,* attorneys], for the plaintiff.

*William A. Young,* for the respondents Herbert G. Streat, Emilie S. Lewis and Ruth S. Green.

*Harold A. Donegan* of counsel [*Hersey Egginton* and *Malcolm B. Hoyt* with him on the brief; *Larkin, Rathbone & Perry,* attorneys], for the respondent Chemical Bank and Trust Company and another, as committee, etc., of Bertha Streat, an incompetent, now deceased.

*Charles Furnald Smith* of counsel [*Carroll, Dutcher & Smith,* attorneys], for the respondent Thomas Streat, as administrator, etc., of Bertha Streat, deceased.

MERRELL, J.   The plaintiff, Chemical Bank and Trust Company, as successor of the Chemical National Bank of New York, trustee under a certain trust agreement made by James Streat, brings the present action for an accounting by said plaintiff, as trustee under the trust agreement dated April 10, 1924, executed by the said James Streat as settlor.   Upon this appeal we are called upon to construe the terms of the trust agreement and particularly as to the propriety of certain payments of income upon the trust fund made by the trustee to the committee of Bertha Streat, a sister of the settlor, between December 16, 1925, and February 28, 1927, and which payments of income amounted in the aggregate to $7,408.76, and also as to the proper distribution to be made by the trustee of a balance of income remaining in its hands amounting to $17,012.76.   Subsequent to the execution of the trust agreement mentioned, the settlor, James Streat, died, leaving a last will and testament wherein the defendant, appellant, was named as residuary legatee.   As such residuary legatee the said Thomas Streat now claims to be entitled to the said income payments from said trust fund amounting to $7,408.76, and also to the said balance of income remaining in the hands of said trustee.

James Streat, the settlor, was a bachelor.   He was a man of wealth and for many years prior to his death, which occurred on December 21, 1924, less than a year after executing said trust agreement, he had resided with his sister, Bertha Streat, in an

apartment at 1730 Broadway, New York city. Miss Streat, the sister, had never married, and between the settlor and the sister there appears to have existed a close and affectionate relationship. About a month prior to the execution of the trust agreement the settlor's said sister sustained a shock of apoplexy as a result of which she became completely paralyzed on one side and partially paralyzed on the other. Her condition was such that she was unable to write and her brain was incapable of functioning normally. She was unable to talk or express her wishes and was practically helpless to manage herself or her affairs. She, at that time, possessed personal property of a value of upwards of $200,000. She received therefrom an income amounting to from $8,000 to $9,000 a year, an amount sufficient for all her necessary and reasonable requirements. Owing to her helpless physical and mental condition she was unable to manage her affairs or to give any directions concerning her person or property. At the time of the execution of the said trust agreement the settlor was a man approaching eighty years of age, and had himself suffered one stroke of apoplexy and feared a recurrence at any time. Having a deep solicitude for his sister's condition and fearing that at some time in the future when he himself might be dead or physically incapable of managing her affairs, James Streat executed, on April 10, 1924, the trust agreement in question. That the settlor's fears as to his own eventual inability to care for his helpless sister and to manage her affairs was well founded is proven by the fact that on December twenty-first he himself sustained a second stroke of paralysis from which he died. The trust agreement itself is clear and unambiguous, and expresses beyond any question the settlor's motive in creating the trust for his sister upon certain conditions therein clearly set forth. The trust agreement recites as follows:

" WHEREAS the first party desires at all times to fully provide for the care, maintenance and support of his sister, Miss Bertha Streat, and although his said sister owns a considerable amount of cash, securities and property, nevertheless, at times her physical health is such that she is unable to perform the acts necessary to collect the income therefrom so as to provide her with needed funds."

The settlor's purpose in creating the trust is expressed in the following clear and unambiguous language:

" *Now Therefore*, for the purpose of providing a fund which may be available for and applied to the care, maintenance and support of his said sister, Bertha Streat, *either when her individual income is insufficient for her needs, or when she is unable to obtain prompt payment thereof, whether by reason of her own physical disability, or otherwise,* the first party does hereby assign, transfer and set

over unto the second party the securities set forth in Schedule ' A ' hereto annexed. Said fund is to be held by the second party until the death of Miss Bertha Streat, the sister of the first party, or the revocation of this instrument by the first party, whichever event shall first happen." (Italics are the writer's.)

In the trust agreement there then follows a reservation on the part of the settlor of the right from time to time to change or alter the securities constituting the trust fund and the right of the settlor to receive and retain any and all income that may have been collected thereon. As further manifesting the intent of the settlor and as limiting the authority of the trustee, the trust agreement provides: " The second party is authorized and hereby directed at any time it may be made to appear to it that Miss Bertha Streat, first party's said sister, is in need of funds for care, maintenance or support, or for any other purpose, and such need arises from lack of availability of her own funds or from her inability to take steps necessary to procure payment to her of such funds, to pay out for the care, maintenance and support of the said sister of the first party, or for any other similar purpose, such amounts as may be proper in its judgment to adequately care for, maintain and support her."

The instrument also contains a reservation of the right of revocation and the right of the settlor to repossess himself of the securities constituting the trust fund. It is also further provided that in case of the termination of the trust agreement by death of the said Bertha Streat, then the securities constituting the trust fund, or so much thereof as might remain, should be turned over by the trustee to the first party or to his estate, if he be not then living. From the plain and unambiguous language of the trust agreement above quoted the intent of the settlor is clear. The settlor, with a deep concern for his helpless sister, with whom he had resided for many years, realizing her inability to care for herself or manage her property, and realizing that, owing to his own physical condition, the time was approaching when he no longer could look after his affairs, determined to make provision to the end that his sister should not come to want, and so placed in the hands of his trustee certain securities with the direction that if, at any time, the individual income of his sister should be found insufficient for her needs or if she was unable to obtain prompt payment thereof by reason of her physical disability or otherwise, and if said sister should become in need of funds for her care, maintenance or support, or for any other purpose, and if such need should arise from lack of availability of her own funds or from her inability to take steps necessary to procure payment to her of such

funds, then that the trustee should pay out from the income derived from the said trust fund sufficient to adequately care for, maintain and support the settlor's said sister. During the eight months that the settlor survived the settlement he received all of the income from the securities placed by him in said trust fund. Prior to his decease the testator executed his last will and testament wherein, to further insure the comfort of his said sister, the testator directed his executors to establish a fund and to pay to the sister an annuity of $20,000. With such direction contained in the testator's will, the executors complied. Immediately following the death of James Streat, an application was made for the appointment of a committee of the property and estate of the said Bertha Streat, and as a result of such proceeding the Chemical Bank and Trust Company and the defendant Charles L. Hoffman were appointed committee of the person and property of Bertha Streat, said incompetent. Said committee duly qualified and, until the death of said Bertha Streat, performed their duties as such committee and received the income upon the individual property of the said incompetent, and which income amounted to from $8,000 to $9,000 a year, and in addition thereto the committee received the annuity of $20,000 provided under the will of James Streat, deceased. The evidence shows that at no time during the life of Bertha Streat did the committee expend for her care, maintenance and comfort to exceed $15,000. Therefore, there remained from the income on her individual property and the annuity received under her brother's will a balance over her requirements of from $13,000 to $14,000. Nevertheless, the plaintiff trustee, upon the demand of the committee of said incompetent, and up to February 28, 1927, paid over to the committee income on the trust fund amounting to $7,408.76. On said last-mentioned date, Thomas Streat, the residuary legatee under the will of the testator, notified the trustee that he objected to the payments of income so made by the trustee to said committee, and since said protest was made the trustee made no further payments from the principal or income of the trust fund, except for the necessary expenses and commissions of the trustee. The trustee has retained all such principal and has held all such income awaiting direction of the court as to its proper distribution. Bertha Streat died on November 25, 1930, and at the date of her death the amount of accumulated income of the trust fund so held by the trustee amounted to $17,012.76, upon which interest has accrued in the sum of $606.98. The referee very properly held that James Streat, during his lifetime, was vested with the right to receive and retain any and all income that might be collected by the trustee under the agreement, and that such right was a property right.

The referee, however, held that under the terms of said agreement the settlor made " a present, valid gift of the entire income of the trust fund from and after the death of the settlor to Bertha Streat, the life beneficiary." The referee also held that the income in the amount of $7,408.76, which the trustee paid to the committee of said incompetent during her life, was properly paid to said committee, and that the administrator of the estate of Bertha Streat is presently entitled to receive all income in the hands of the trustee as of November 25, 1930, when the incompetent died, amounting to $17,012.76, besides interest, amounting to $606.98, less the trustee's proper charges and disbursements.

In our opinion the referee erred in holding that there was a present valid gift of the entire income of the trust fund from and after the death of the settlor to Bertha Streat, the life beneficiary, and the referee likewise erred in holding that the income paid by the trustee to the committee of Bertha Streat prior to the protest of said residuary legatee, amounting to $7,408.76, was properly paid to the committee of said incompetent during her life, and also that the referee erred in holding that the administrator of the estate of Bertha Streat, deceased, was entitled to receive all of the income in the hands of the trustee as of November 25, 1930, amounting to $17,012.76, and interest, as aforesaid. It thus appears that the total amount of income involved in this controversy amounts to $24,421.52. The referee held that while the issues involved in the present action related only to income, nevertheless, all costs, allowances and other expenses of the present action were chargeable against the principal of the trust fund. We think the referee was correct in charging such costs, allowances and expenses to the principal of the trust fund. It seems to us, however, that in comparison with the total amount of income involved, the allowances to the attorneys for the respective parties, amounting to $7,764, and the referee's fee of $2,500, in all, $10,264, or nearly one-half of the amount involved, were altogether too excessive.

We are of the opinion that the result reached by the referee was at variance with the clear intent of the settlor as expressed in the trust agreement. It seems to us that upon the face of said trust agreement the settlor did not desire in any way to increase the income which his sister was receiving from her own property, but that he merely desired to provide for certain contingencies which might arise growing out of her disability to avail herself of such income. It will be noted that the trust agreement made no present valid gift of the entire income of the trust fund, from and after the death of the settlor, to his sister, nor did the agreement give any part of such income to her, except upon the express contin-

gencies contained in the agreement, viz., a need on her part for the funds for her care, maintenance or support or for any other purpose, such need arising from a lack of availability of her own funds or from her inability to take steps necessary to procure payment to her of such funds. During his lifetime the testator reserved the right to receive and retain all income, subject, however, to the authority of the trustee to make payments therefrom for his sister upon the contingencies mentioned. The referee correctly held that this was a property right in the settlor, and was transferable by him. Upon his death, the right passed to the defendant Thomas Streat, the residuary legatee named by said James Streat in his will, in accordance with its provisions. The trust agreement expressly provided that before the trustee made the payments in question the said condition precedent must be performed, and unless it was made to appear to the trustee that the said beneficiary was in need of funds, or that such need arose from lack of availability of her own funds or her inability to take steps necessary to procure payment to her of such funds, there should be no payment of the income to the beneficiary. We are, therefore, of the opinion that the payments to the committee of said incompetent of said income on said trust fund, amounting to $7,408.76, were improperly made, and that the said amount should be refunded by the trustee to said Thomas Streat, as residuary legatee under the will of James Streat, deceased. We are further of the opinion that the income in the hands of the trustee as of November 25, 1930, amounting to $17,012.76, properly belongs to and should be paid to the said defendant, with interest thereon, amounting to $606.98, subject only to the trustee's proper charges and disbursements.

The referee correctly found that, in executing said trust instrument, James Streat had in mind that his sister, the beneficiary thereof, owned a considerable amount of cash, securities and property, but that, owing to her physical condition, she might, at times, be unable to take steps necessary to procure payment to her of her said funds. Nevertheless, for some reason beyond our understanding, the referee refused to find, as requested by appellant: " That the purpose of James Streat in executing said deed of trust was not to increase the income which Bertha Streat was receiving from her own property, but to insure her against a loss of income in case her physical condition should prevent her from performing the acts necessary to collect such income."

In the clearest language the trust instrument specifies certain definite conditions precedent, upon the performance of all of which the trustee's authority to make any payments to or for Bertha Streat depended.

We are unable to reconcile many of the referee's findings with other apparently contradictory findings made by the referee. For example: The referee found, in accordance with the third conclusion of law, as follows:

" III. The authority of said trustee to make any payment of income arising from said trust fund to Bertha Streat depended upon the performance of the following conditions precedent:

" (1) It must be made to appear to said trustee that Bertha Streat was in need of funds for care, maintenance or support, or for any other purpose, and

" (2) It must be made to appear to said trustee that such need arose from lack of availability of Bertha Streat's own funds or from her inability to take the steps necessary to procure payment to her of such funds."

Notwithstanding such conclusion of law made by the referee, the referee refused to find defendant's fourth request to find as a conclusion of law as follows:

"*Fourth.* That said trustee had no authority or discretion to pay any income arising from the trust fund to Bertha Streat unless it were first made to appear to it that Bertha Streat was in need of funds and that such need arose from lack of availability of her own funds or from her inability to take the steps necessary to procure payment to her of such funds."

Certainly, if the authority of the trustee to make any payments to the beneficiary depended upon the performance of the specified conditions precedent, it must necessarily follow that the trustee had no authority or discretion to make any such payments unless the conditions had first been performed. Unquestionably the referee was right in finding the third conclusion of law above mentioned, and, having so found, could not consistently refuse the defendant's fourth request, above quoted. Not only are there marked inconsistencies between the various conclusions of law in the referee's report, but there are also glaring inconsistencies between the report of the referee and the opinion rendered by him. The referee states in his opinion, after reciting the provisions of the trust agreement and stating the questions involved, that the trust agreement "makes a present, valid gift of the entire income to Bertha Streat," and this in the face of the finding of the referee that James Streat, during his lifetime, was vested with the right to receive and retain any or all income, and that such right was a property right. The referee then holds that under the trust agreement the trustee is authorized to pay out or apply for the care, maintenance and support of the beneficiary such amounts as it, in its discretion, may deem adequate for her care, maintenance and

support, although it exhausts the entire income and also invades the principal of the trust fund. The referee, in his opinion, says: " The gift was of the entire income plus such part of the principal as the trustee might deem necessary." Thereby the referee wholly disregards the conditions precedent contained in the agreement which he had held must be performed before the trustee could acquire authority to make any payment to Bertha Streat. It is very clear that any discretion to which the referee refers could vest only after the performance of said conditions precedent. It seems to us the referee went far afield in thus construing the meaning of the trust agreement. The referee was undoubtedly moved by fear that any other construction might result in an unlawful accumulation of income. The referee, in his opinion, then states that: " The law is well settled that the establishment of a trust with a direction to pay or apply the income thereof to or for the use of a life beneficiary effects an absolute gift of the income to the life beneficiary, even though the trustee is given discretion as to the time, manner and amount of payment. A condition as to the time of payment, or discretion in the trustee as to the amount of payment simply gives to the trustee control of the income until it, in its discretion, determines that need for its expenditure has arisen. This result follows even though the trust agreement expressly directs the accumulation of so much of the income as is not applied to the use of the beneficiary and the payment of the same to persons other than the life beneficiary." (Citing several authorities in support of such statement of the law.) Undoubtedly the referee was correct in so stating the law, but that such principle of law was entirely inapplicable to the facts in the present case seems clear to us. In none of the cases cited by the referee in support of the principle of law thus enunciated was there any reservation of the right in the testator to receive the income on the trust fund. Each of the cases cited by the referee involved a testamentary trust, and, obviously, there could be no reservation of right to receive the income of the trust fund. In none of the cases cited by the referee was the right of the beneficiary to receive any income made dependent upon the happening of any contingencies or the performance of any conditions precedent. In all of said cases, in the opinion of the court, there was an unqualified gift of the whole income to the beneficiary, with discretion, however, in the trustee as to its application. It seems to us there was no reason for the fear of the referee that any other interpretation of the trust instrument than that which he made would result in an unlawful accumulation of income. While James Streat lived he was entitled to receive and retain all of the income of the

trust fund, subject only to the requirements of his sister to receive payments therefrom upon the performance of certain conditions precedent. We think that upon the death of said James Streat this right passed to the defendant Thomas Streat under the residuary clause of the testator's will. We deem that it was the duty of the trustee to pay over to James Streat during his lifetime, and upon his death to the residuary legatee named in his will, all of the income of the trust fund not properly to be paid to Bertha Streat under the conditions imposed in the trust agreement. Never during the lifetime of James Streat was any necessity shown for the payment of any part of the income of the trust fund to the beneficiary, and after his death there was no evidence showing that either of the contingencies mentioned in the trust agreement had arisen justifying the payment to the said Bertha Streat or to her committee of the said income, amounting to $7,408.76, which was paid by the said trustee to the committee upon its demand. We are unable to understand how a gift, conditional during the life of the settlor, became absolute immediately upon his death. Certainly, the agreement does not indicate any such change. There is no indication of any intention on the part of the settlor to enlarge, after his death, the authority of the trustee or to then make absolute a gift which theretofore was conditional. The conditions after the death of the testator still remained in full force, but the possibility of their performance or that the contingencies therein mentioned would ever arise became much more remote owing to the fact that the income of Bertha Streat, upon the death of her brother, was increased by $20,000 a year, or in an amount much more than was shown to have been required by her. We think the gift of the whole residuary estate of the testator under the residuary clause contained in his will carried with it not only the testator's tangible property, after the payment of the administration expenses and the bequests to legatees and after the purchase of the annuity for the benefit of his sister, including the right to all income of the trust fund, subject only to the contingent charge in favor of testator's sister, passed directly to the appellant, Thomas Streat. The residuary clause was clear and unambiguous. It provided that " All the rest, residue and remainder of my estate I give, devise and bequeath to my brother Thomas Streat  *  *  *."

The very fact that the will contained a residuary clause raised the presumption that the testator did not intend to die intestate as to any of his property. A will should always be construed, if possible, so as to avoid intestacy. (*Matter of Hunt,* 207 App. Div. 127; affd., 237 N. Y. 613; *Riker* v. *Cornwell,* 113 id. 115, 127; *Matter of Miner,* 146 id. 121.)

Upon the appointment of the committee of the person and property of Bertha Streat, following the death of James Streat, the said committee was clothed with power to care for the said incompetent and for such purpose it took such steps as might be necessary to procure the payment to her of the income or principal, if required, of her individual property. In this respect they were clothed with power to act as fully as the incompetent could have acted if competent. Plaintiff's trust officer testified that the committee of the said incompetent was appointed on May 5, 1925, and that owing to her partially paralyzed condition she might have difficulty in cutting off and depositing her coupons or indorsing dividend checks, and that when the committee was appointed they did those things for her and that they did whatever was necessary to collect her income and make it available, " managed her property and provided for her." In accordance with such testimony the referee found, as requested by defendant: " That said committee from the time of its appointment acted for Bertha Streat in all financial matters, cut off and deposited her coupons and indorsed and deposited dividend checks."

Notwithstanding such finding of fact, the referee refused to find: " That said committee did whatever was necessary to collect Bertha Streat's income and make it available for her use and managed her property and provided for her." Such refusal to find as so requested by defendant is quite beyond our understanding. To the referee's various refusals to find as requested the defendant duly excepted. We are of the opinion that Thomas Streat, individually, is entitled to the income from the trust fund, amounting to $7,408.76, which was paid over by the trustee to the committee of Bertha Streat, the incompetent, between December 16, 1925, and February 28, 1927, and that said defendant, Thomas Streat, is also entitled to the accumulation of income since February 28, 1927, now in the hands of the trustee, amounting to $17,012.76, with interest thereon, amounting to $606.98, subject, however, to the proper charges and disbursements of the trustee.

We are further of the opinion that the allowances to counsel and of fees to the referee should be materially reduced. The facts were undisputed. The only issue which the referee determined was as to the disposition of income amounting to $24,421.52. Allowances to counsel were made to the extent of $7,764. While it was stipulated that the referee might allow as compensation the reasonable value of the services rendered by counsel, we think the amounts allowed were quite out of proportion to the work done and were unreasonable in amount. The only issue affecting the committee of the incompetent was as to whether or not the pay-

ment of $7,408.76 made by the trustee to the committee was properly paid, and yet the committee was given an allowance of $1,000. The only interest which the plaintiff trustee had in the accumulated income in its hands was to pay it over as directed by the court, and yet the trustee has been allowed in this action the substantial sum of $4,500. Total allowances to the parties or their attorneys amount to nearly one-third of the sum involved, and if to such allowances there be added the referee's fee of $2,500, said fee and the allowance together would amount to nearly one-half of the amount of the moneys involved. We are of the opinion that if the referee was to receive half the fees allowed him and the various parties were awarded one-half of the amounts found by the referee, they would be amply repaid for any services rendered.

We are of the opinion, therefore, that the judgment appealed from should be modified in accordance with this opinion, and as so modified affirmed, without costs to either party as against the other.

FINCH, P. J., MARTIN, SHERMAN and TOWNLEY, JJ., concur.

Judgment modified in accordance with opinion, and as so modified affirmed, without costs to either party as against the other. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.